```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Toumany Sayon Sako,           :

    Plaintiff,            :

    v.                    :       Case No. 2:06-cv-0728

Ohio Department of            :       MAGISTRATE JUDGE KEMP
Administrative Services,

    Defendant.            :

OPINION AND ORDER

This national origin discrimination case is before the Court on a motion for summary judgment filed by the defendant, the Ohio Department of Administrative Services ("DAS"). For the following reasons, the motion will be granted.

I.

The plaintiff, Toumany Sayon Sako, was employed as a security officer I with the DAS. He was allegedly verbally combative and insubordinate towards his supervisors and was terminated on June 22, 2005. Mr. Sako subsequently filed a grievance with his union claiming that his termination was not for just cause. He also filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC").

On November 23, 2005, while the grievances were pending, Mr. Sako, his union and DAS entered into a "Grievance Settlement Agreement" ("settlement agreement") which stated, *inter alia*:

> Whereas, there is now pending a grievance filed by the above named employee and [the Union] against DAS pursuant to the Collective Bargaining Agreement, identified as grievance number 02-04-20050629-0015-01-03 alleging: Violation of Article 24.02 and 24.05

Whereas, DAS denies any liability in connection with the alleged claim;

Whereas, all parties hereto wish to reach a full and final settlement of all matters and causes of action arising out of the claim set forth above;

Now, therefore, all parties hereto, in consideration of their mutual covenants and agreements to be performed, as hereinafter set forth, agree as follows:

1. This document will serve as the Employee's resignation. The resignation will be coded as S01 with effective date 6/22/05. EHOC will indicate "REMOVAL CHNGD TO RESIGNATION PER GRIEV STLMT EFF 6/22/05".

2. The Employee will be paid a lump sum of $6,500.00. The Employee will be responsible for all applicable deductions.

3. This document will serve to withdraw grievance 02-04-20050629-0015-01-03.

4. The Employee will withdraw the following pending actions:

- OCRC discrimination claim (COL) 71062205 (32115) 063005; EEOC 22A A5 03419; any other allegations that may be pending.

- Unemployment Determination ID #212217618-1, and take no further action to seek unemployment benefits.

***

(This settlement is valid without the Employee's signature. The Employee's signature is only needed to obtain waiver of individual rights.)

Employee agrees:

To waive any and all rights they may currently or subsequently possess to receive any

> reparation, restitution or redress for the events which formed the basis of the aforementioned grievance, including the right to resort to administrative appeal or through the institution of legal action. Employee specifically agrees to withdraw the following actions which are currently pending:
>
> - OCRC discrimination claim (COL) 71062205 (32115) 063005; EEOC 22A A5 03419; any other allegations that may be pending.
>
> - Unemployment Determination ID #212217618-1, and to take no further action to seek unemployment benefits.
>
> I have read the above paragraph and I am making a KNOWING and VOLUNTARY Waiver of my rights as set forth above.

(Def. Mot. for Summ. Judg., Ex. E). Mr. Sako signed and dated the settlement agreement.

Despite the terms in the settlement agreement, Mr. Sako filed an application to proceed *in forma pauperis* and complaint in this Court alleging employment discrimination based on national origin under Title VII of the Civil Rights Act and 42 U.S.C. § 1983. On January 26, 2007, DAS moved for summary judgment claiming that the settlement agreement bars Mr. Sako from bringing suit arising from termination with DAS. In response, Mr. Sako (now represented by counsel), contends that the settlement agreement is unenforceable because (1) the settlement agreement lacked adequate consideration and (2) Mr. Sako did not knowingly and voluntarily waive his rights. The motion for summary judgment is now fully briefed and ripe for adjudication.

II.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

3

>show that there is no genuine issue as to any
>material fact and that the moving party is
>entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962); accord, County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

>The primary difference between the two
>motions is procedural: summary judgment
>motions are usually made before trial and
>decided on documentary evidence, while
>directed verdict motions are made at trial
>and decided on the evidence that has been
>admitted. Bill Johnson's Restaurants, Inc. v.
>NLRB, 461 U.S. 731, 745, n. 11 (1983). In

4

> essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord, Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.1984), cert. denied, 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Association, Inc., 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes, 398 U.S. at 157-60; Smith v. Hudson, 600 F.2d 60, 65 (6th Cir.1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient;

there must be evidence on which the jury could reasonably find for the opposing party. <u>Anderson</u>, 477 U.S. at 251. As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968)(footnote omitted).

### III.

Under certain circumstances, employees and employers may negotiate a valid release of Title VII claims. <u>Adams v. Phillip Morris, Inc.</u>, 67 F.3d 580, 583 (6th Cir.1995) (citing <u>Runyan v. National Cash Register Corp.</u>, 787 F.2d 1039, 1044 (6th Cir.1986)("Runyan II")). Ordinary contract principles apply when determining whether such a waiver is valid, taking into consideration the superior bargaining power and position an employer has over an employee. <u>Adams</u>, 67 F.3d at 583. In determining whether or not a waiver is valid, the Court must determine that (1) there was adequate consideration, <u>Runyan v. NCR Corp.</u>, 573 F.Supp. 1454 (S.D. Ohio 1983)("Runyan I"), and (2) the releasor knowingly and voluntarily executed it, <u>Runyan II</u>, 787 F.2d at 1044. <u>See</u> <u>also</u> <u>Pitts v. Dayton Power & Light Co.</u>, 748 F.Supp. 527, 532 (S.D. Ohio 1989)(examining the two criteria).

*Adequate Consideration*

Mr. Sako argues:

> At the time of the negotiation, plaintiff had applied for unemployment compensation

> benefits. He received $6500 from Defendant but was required to withdraw his claim for unemployment compensation and to take no further action to seek unemployment benefits. Upon approval of plaintiff's unemployment compensation benefits, he would have received approximately $390 per week (70% of his wages), and under Ohio law was entitled to receive such benefits for 26 weeks. As a result, he received $6500 but was required to give up more than $10,000. Clearly, the consideration for the grievance settlement agreement was inadequate.

(Plaint. Memo. in Opp. to Def. Mot. for Summ. Judg. at p. 5 (internal footnote and quotations omitted)). For support, he cites Runyan I, 573 F.Supp. 1454 (S.D. Ohio 1983).

In Runyan, a plaintiff that signed an agreement releasing his employer from liability under the Age Discrimination Employment Act, in exchange for $12,000 more than he was entitled to receive under a previous contract, brought suit alleging that the agreement lacked adequate consideration and was therefore unenforceable. The Court disagreed and stated, in relevant part:

> First, Plaintiff misconstrues the meaning of the concept of adequacy of consideration. As discussed in *Maynard v. Durham & S.R. Co.*, 365 U.S. 160, 163 ... adequacy of consideration goes to the question of whether there were mutual concessions, that is, in reference to the employee, whether he received something to which he did not already have an absolute right. "The key factor in determining the validity of the release is not the amount of consideration the person giving the release receives, unless it is merely a token amount, but rather whether the person received something for which he was not previously entitled." *Schmitt-Norton Ford, Inc. v. Ford Motor Co.*, 524 F.Supp. 1099, 1103 (D.Minn.1981). Thus, the question of the adequacy of consideration turns not on whether a party received as much as he might have had he litigated the dispute and won, but, rather,

7

> whether he received something to which he was not already unquestionably entitled. Plaintiff does not allege that he already had a legal right to the $12,000 increase in the Consulting Agreement, which he received in exchange for executing the release, nor can the Court conclude that $12,000 is a mere token amount. Thus, the Court finds that there is no genuine issue of material fact as to the adequacy of the consideration.

Id. at 1460.

In the instant case, Mr. Sako received $6,500. In addition, his employment record was changed to reflect that he resigned rather than that he was terminated. In exchange, Mr. Sako agreed to withdraw his grievances and waive all legal rights associated with the alleged events leading to the settlement agreement. Mr. Sako also agreed to terminate his unemployment benefits claim.

The Court concludes that both parties made mutual concessions. In regards to Mr. Sako, he received $6500, which is not a token amount, and a designation on his employment record that he resigned, rather than was terminated, from his job with DAS. Mr. Sako did not have an absolute right to either of those things. He had an unemployment benefits claim which might have netted him more than $6500, but DAS could have contested the claim, and if the evidence showed that Mr. Sako was fired for cause, he would not have received any benefits. See Ohio Rev. Code § 4141.29(D)(2)(a). Thus, the agreement gave Mr. Sako things to which he was not already unquestionably entitled. The Court therefore concludes that the consideration is adequate as a matter of law.

*Knowing and Voluntary*

Mr. Sako contends that he did not knowingly and voluntarily execute the waiver. First, Mr. Sako claims that he immigrated to the United States in 1994. At that time, Mr. Sako spoke only French. He immediately enrolled in English classes at Howard University. However, he has completed only the equivalent of a

8

high school education and has no formal training in business or law.  Second, Mr. Sako contends that he did not have ample time to review and consider the waiver before signing it.  Third, Mr. Sako suggests that the lack of time precluded him from consulting an attorney.  Lastly, Mr. Sako argues that the waiver lacks clarity.

In response, DAS argues that Mr. Sako knowingly and voluntarily entered into a settlement agreement with DAS.  As evidence of this, DAS highlights the fact that the line immediately above Mr. Sako's signature states that Mr. Sako "read the above paragraph" and made "a KNOWING AND VOLUNTARY Waiver" of his rights. (Def. Mot. for Summ. Judg., Ex. E (emphasis in original)).  DAS also points to the fact that Mr. Sako was not prevented from having counsel present and chose to have union representation while signing the agreement.  Next, DAS contends that Mr. Sako filed a well-written complaint in this Court setting forth causes of action under Title VII and § 1983, which is evidence of Mr. Sako's command of the English language and general knowledge of his rights. Finally, DAS contends that the waiver was clear to its meaning and intent.

In evaluating whether a release has been knowingly and voluntarily executed, a Court must look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances.  <u>Adams</u>, 67 F.3d at 583. The relevant evidence in the record on the issue of whether Mr. Sako knowingly and voluntarily executed the waiver is the waiver itself and Mr. Sako's affidavit.  The affidavit states, in pertinent part:

> I am an immigrant and came to the United States from Guinea, Africa in 1994.  I attended French grammar school in Africa

before coming to the United States. I completed the equivalent of a high school education. English is not my primary language. My first language is French.

Upon arrival to the United States, I took classes at Howard University in Washington, DC for approximately 6 months where I learned English.

I do not have experience in employment law, human resources or business.

I do not have a formal education in human resources, business or law.

Since immigrating to the United States, I have not been exposed to the American laws and regulations related to discrimination.

The laws of Guinea, Africa do not include provisions prohibiting discrimination based on national origin.

I was employed as a Security Officer I with the Department of Administrative Services from January 8, 2001 until my termination on June 22, 2005.

\*\*\*

The Union negotiated a settlement wherein my employer was required to pay $6,500.00 to me. This settlement agreement was signed by representatives of my former employer and union representatives and specifically states that it is valid without my signature.

The agreement was presented to me minutes before I was required to sign it. I was not given an option about whether or not to sign it.

At no time before I was presented with the agreement, was I instructed or encouraged to seek legal advice. I was unaware that I had the right to seek counsel. The agreement was not presented to me in advance of the meeting,

>and, therefore, I didn't have an opportunity to consult with legal counsel at any time before signing the agreement.
>
>At the time I was presented with the agreement, I was in a dire financial situation.
>
>Based on my limited education and experience, I had been unable to find replacement employment and had not received any income from employment from the time of my termination in June[] 2005 through the time I was required to execute the agreement in November[] 2005. Due to the seriousness of my financial situation, I had no choice but to cash out retirement benefits which had serious tax consequences. The gross amount I received was less than $7,000.00 but I was required to pay penalties and taxes from these funds.
>
>At the time of my termination, my wife was not employed. I was the sole financial support to my wife and provided support to my two children and my family in Africa. As a result of my termination, my wife was forced to work part-time in an effort to provide enough income to provide food and necessities for our family. This income, however, was seriously deficient to provide basic needs.
>
>In November[] 2005, I had been unable to pay rent, utilities, and other expenses for 5 months. I had been evicted from two apartments and was behind in child support obligations.
>
>Prior to November[] 2005, my wife and I did not have any savings. We did not even have a checking or savings account.

(Aff. of Mr. Sako at ¶¶ 2-8, 23-31).

Preliminarily, although Mr. Sako does not formally mention this in his argument against summary judgment, the Court rejects any notion that economic duress invalidates his waiver. See, e.g., Dorn v. General Motors Corp., 131 Fed.Appx. 462, 468-69 (6th

11

Cir.2005)(unpublished)(choosing between signing the release and being fired without benefits is not economic duress); Parker v. Key Elastics, Inc., 68 F.Supp.2d 818, 827 (E.D. Mich. 1999) ("Plaintiff's decision to sign the agreement despite these objections indicates that he felt economic pressure to settle his claims. However, if such pressure were deemed sufficient to overcome an otherwise knowing and voluntary release, it is difficult to imagine a case in which a release signed in exchange for reinstatement would ever be enforceable"). Additionally, the Court rejects DAS's argument that Mr. Sako ratified the settlement agreement when he cashed the $6500 check. "Generally, where the contract is a Waiver and Release, the releasor who retains the consideration after learning the agreement is voidable has effectively ratified the release and may not later avoid its terms." Cumberland & Ohio Co. v. First American Nat'l Bank, 936 F.2d 846, 850 (6th Cir.1991). In the instant case, according to DAS's motion for summary judgment, Mr. Sako cashed the $6500 check within six days of receiving it. There is no evidence that in the six days between signing the settlement agreement and cashing the check, Mr. Sako learned that the settlement agreement was potentially voidable and chose to retain the consideration.

After examining the Adams factors, the Court concludes, based on the totality of the circumstances, that Mr. Sako knowingly and voluntary waived his rights to sue DAS based on the facts surrounding his termination. First, the Court notes that the settlement agreement is a little over a page long and is clear and concise in its language. The settlement agreement's brevity indicates that it could easily be read and understood.

Second, although French is Mr. Sako's first language, he has been speaking English for over thirteen years. The settlement agreement does not contain any formal "legal" or technical language that is difficult to understand or comprehend, and someone with his

background should have been able to understand it.

Third, the Court highlights the plain language above Mr. Sako's signature. That language, parts of which are capitalized, unambiguously indicated that Mr. Sako was knowingly and voluntarily waiving his legal rights. By signing the document, Mr. Sako affirmatively agreed that he was knowingly and voluntarily signing a release.

Fourth, the waiver is unequivocal in its language. Mr. Sako argues that the language "This settlement is valid without the Employee's signature" is confusing. However, this is not the full statement. The full statement reads: "This settlement is valid without the Employee's signature. The Employee's signature is only needed to obtain waiver of individual rights." This language states that Mr. Sako's signature was necessary in order to waive the right to sue DAS based on the events that led to his termination. Further, the release itself states that Mr. Sako waives "any and all rights" he "may currently or subsequently possess to receive any reparation, restitution or redress for the events which formed the basis of the aforementioned grievance ... ."

Fifth, although Mr. Sako did not retain counsel before he signed the release, he does not state that the defendant prevented him from consulting with an attorney or told him he could not do so. The Court notes that Mr. Sako did have a union representative present at the meeting.

Finally, while Mr. Sako had only "minutes" to decide whether or not to sign the waiver, the Court concludes that the totality of the circumstances indicate that Mr. Sako knowingly and voluntarily waived his legal rights. There is no evidence that Mr. Sako requested more time before signing the settlement agreement. There also is no indication that Mr. Sako was pressured into making an immediate decision. The Court acknowledges that this is a short

period of time to reflect on whether or not to waive legal rights, but, given the other factors outlined above, the Court concludes that Mr. Sako was aware of the waiver's legal consequences and ramifications.

Accordingly, the Court concludes that the release was knowingly and voluntarily executed by Mr. Sako. Mr. Sako is therefore precluded from receiving "any reparation, restitution or redress for the events which formed the basis of the" settlement agreement. This includes the claims asserted in this case.

IV.

Based on the foregoing, DAS's motion for summary judgment (doc. #17) is GRANTED. This case is dismissed with prejudice. The Clerk is directed to enter judgment in favor of the defendant.


/s/ Terence P. Kemp
United States Magistrate Judge